IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE TRAVELERS COMPANIES, INC. and ST. PAUL FIRE AND MARINE INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> OLD MUTUAL PLC, <br><br> Defendant. | _____ Civ. _____ <br><br><br><br> **COMPLAINT** |

Plaintiffs The Travelers Companies, Inc. ("Travelers") and St. Paul Fire and Marine Insurance Company ("St. Paul Fire and Marine," and together with Travelers, "Plaintiffs"), by their undersigned attorneys, allege as follows:

## NATURE OF THE ACTION

1.  In February 1999, St. Paul Fire and Marine entered a guaranty for the benefit of Fidelity and Guaranty Life Insurance Company ("F&G Life") in which St. Paul Fire and Marine guaranteed to pay up to $480 million in connection with monetary obligations arising from certain insurance policies and annuity contracts issued by F&G Life (the "Guaranty"). In 2001, Old Mutual plc ("OMplc") acquired F&G Life from St. Paul Fire and Marine, and as part of that transaction, agreed to indemnify St. Paul Fire and Marine and its parent, Travelers, for any liability they might have under the Guaranty, among other contracts (the "Indemnity").

2.  At the time the Indemnity was executed, OMplc was an international investment, savings, insurance and banking group headquartered in the United Kingdom. It was the asset-rich owner of a number of profitable businesses, including the largest financial services business in South Africa and one of the leading private client stockbroking businesses in the

United Kingdom. In 2001 alone, it had reported operating profits of almost £1 billion. Based on OMplc's financial condition and the strength of its businesses, Plaintiffs viewed the Indemnity as valuable protection against any claims against it under the Guaranty and other contracts. Plaintiffs have continued to monitor OMplc's financial condition and rely on the Indemnity from OMplc as protection for any obligations under the Guaranty.

3. OMplc has undertaken a course that would deprive Plaintiffs of the protection it bargained for under the Indemnity. In 2016, OMplc announced a reorganization or "managed separation" of its businesses. The "managed separation" is, in part, an intentional and purposeful effort by OMplc to put its cash and assets out of reach of its creditors such as Plaintiffs, and to leave it only with liabilities, such as the Indemnity, which it will be unable to pay. OMplc's purposeful course of action and the conveyances it has made in pursuit of its strategy to avoid its obligations to creditors such as Plaintiffs violate the New York Debtor and Creditor Law. OMplc's course of action and conveyances also constitute a breach of the implied covenant of good faith and fair dealing.

4. From June 2016 through March 2018, Plaintiffs have sought assurances from OMplc that OMplc's obligations under the Indemnity will be met after the "managed separation," to no avail. Accordingly, Plaintiffs bring this action to avoid the conveyances made by OMplc in violation of law and to stop OMplc from making additional, imminent conveyances that violate New York law.

5. Plaintiffs seek, pursuant to the New York Debtor and Creditor Law, to avoid the transfers of assets OMplc has made to date as part of its "managed separation." Plaintiffs also seek, pursuant to the New York Debtor and Creditor Law, the Indemnity, and the implied covenant of good faith and fair dealing, an injunction enjoining OMplc's "managed separation"

and enjoining OMplc from further stripping assets so it will be in a position to make good on its obligations to Plaintiffs under the Indemnity.

## PARTIES

6. The Travelers Companies, Inc., formerly known as The St. Paul Travelers Companies, Inc., is a company incorporated under the laws of the State of Minnesota with its principal place of business located in New York, New York. In 2004, the St. Paul Companies, Inc. merged with Travelers Property Casualty Corp. resulting in a combined company, The St. Paul Travelers Companies, whose name was changed to The Travelers Companies, Inc. in 2007.

7. St. Paul Fire and Marine Insurance Company is a company incorporated under the laws of the State of Connecticut with its principal place of business located in Hartford, Connecticut.

8. Old Mutual plc is a public limited company organized under the laws of England and Wales with its principal place of business in London, England.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of States and citizens of foreign states.

10. This Court has personal jurisdiction over OMplc pursuant to the forum selection clause in the Indemnity, which reads, in relevant part: "EACH PARTY CONSENTS TO THE EXCLUSIVE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK AND THE COURTS HEARING APPEALS THEREFROM FOR ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT."

11. This Court also has personal jurisdiction over OMplc because its actions caused foreseeable injury to Travelers in this state and district and OMplc derives substantial revenue from international commerce.

12. Venue is proper in this Court pursuant to the forum selection clause in the Indemnity.  Venue is also proper in this district under 28 U.S.C. § 1391(b)(1) because OMplc is a resident of this district under 28 U.S.C. § 1391(c)(2) or (d).

## FACTUAL BACKGROUND

### The Indemnity

13. On April 26, 2001, St. Paul Fire and Marine and OMplc entered into a stock purchase agreement pursuant to which OMplc agreed to acquire all of the capital stock of F&G Life, a subsidiary of United States Fidelity and Guaranty Company ("USF&G"), from St. Paul Fire and Marine.[1]

14. In connection with the closing of that acquisition, OMplc entered into the Indemnity, dated as of September 28, 2001, pursuant to which OMplc agreed to "hold harmless and indemnify" Plaintiffs "against and in respect of . . . any amounts that may be paid or payable by [Plaintiffs] pursuant to or arising out of" certain contracts, most notably the Guaranty dated as of February 3, 1999, made by St. Paul Fire and Marine for the benefit of F&G Life.  The Indemnity further requires OMplc to "execute and deliver such other agreements and documents and take such other actions as may reasonably be requested by [Plaintiffs] in order to consummate and implement the transactions contemplated hereby."

---

[1]     Prior to the sale of F&G Life to OMplc, F&G Life was a wholly-owned subsidiary of USF&G. In 1998, USF&G Corporation, the parent of USF&G at the time, merged with a subsidiary of The St. Paul Companies, becoming a subsidiary of The St. Paul Companies.  In 1999, USF&G Corporation merged into St. Paul Fire and Marine.

4

15. Pursuant to the Guaranty, St. Paul Fire and Marine guaranteed the timely payment of "Obligations" up to a maximum of $480 million, with "Obligations" defined, in relevant part, as "all monetary liabilities and other monetary obligations of [F&G Life] with respect to policies of insurance or annuity contracts issued by [F&G Life]."

16. Thus, OMplc agreed to indemnify Plaintiffs for losses Plaintiffs incur in connection with the Guaranty of $480 million, rendering Plaintiffs creditors of OMplc under the Indemnity.

17. At the time OMplc entered into the Indemnity, it owned several highly profitable businesses, including the largest financial services business in South Africa and one of the leading private client stockbroking businesses in the United Kingdom. In 2001, OMplc had operating profits of almost £1 billion, with £143 billion in client assets under management worldwide.

18. On April 6, 2011, OMplc sold its capital stock of F&G Life to Harbinger Group, Inc. Notwithstanding OMplc's sale of F&G Life stock, OMplc remains liable to Plaintiffs under the Indemnity for, among other things, Plaintiffs' obligations under the Guaranty of $480 million.

19. OMplc's current liability under the Indemnity remains more than $480 million.

### OMplc's "Managed Separation" Strategy

20. Historically, OMplc has served as the ultimate parent company for a group of companies operating four underlying businesses: (a) Old Mutual Wealth ("OM Wealth"), (b) Nedbank, (c) Old Mutual Emerging Markets ("OM Emerging Markets"), and (d) Old Mutual

Asset Management ("OM Asset Management"). In the past, OMplc has owned and managed these businesses.

21. In March 2016, OMplc announced its so-called "managed separation" strategy by which OMplc intends to separate its four underlying businesses from OMplc (and from each other), resulting in four independent businesses. Specifically, OMplc plans to pursue transactions in 2018 that will result in two separate legal entities, one consisting of the OM Wealth business and the other being a new South African holding company named Old Mutual Limited ("OM Limited"). The current shareholders of OMplc will become the shareholders of the two newly listed entities. OM Limited will be a parent holding company initially comprising of OM Emerging Markets, a minority stake in Nedbank, and OMplc. OM Emerging Markets will be the principal operating subsidiary of OM Limited.

22. At the end of the "managed separation" strategy, OMplc—historically the asset-rich owner of a group of companies operating four successful businesses—will be reduced to a non-operating subsidiary of OM Limited merely "comprise[d of] the remaining assets, debt and any other actual or contingent liabilities [of OMplc]."[2] At that point, OMplc will apparently have no ownership stake in the four businesses, no source of revenue, no employees, and few remaining assets, all while retaining a significant amount of OMplc's debts and liabilities, including its over $480 million liability to Plaintiffs under the Indemnity.

**OMplc's Ongoing Loss Of Ownership Of Its Businesses**

23. As part of the "managed separation" strategy, OMplc is aggressively selling its ownership stake in its four businesses and otherwise separating itself from those businesses, to the detriment of its creditors, including Plaintiffs.

---

[2]    Old Mutual Limited Showcase Transcript at 4 (Nov. 1, 2017).

24. In 2017, for example, OMplc reduced its ownership stake in a newly independent OM Asset Management from 51.1% at the start of 2017 to 5.5% at year-end. OM Asset Management is listed on the New York Stock Exchange under the symbol OMAM.

25. In 2018, OMplc plans to transfer a significant portion of its shares in Nedbank to the shareholders of the newly listed OM Limited, while transferring its remaining minority stake in Nedbank to its new parent, OM Limited. OMplc also plans to become independent of both OM Wealth and OM Emerging Markets in 2018. Specifically, OMplc plans to separate from OM Wealth through a "demerger," resulting in OM Wealth becoming a standalone listed entity. Meanwhile, OM Emerging Markets will become independent of OMplc, both of which will become subsidiaries of OM Limited with OM Emerging Markets serving as the operating subsidiary.

26. The assets of the Old Mutual group of companies are substantially with the businesses, which, as a result of the ongoing "managed separation," will become separate and independent of OMplc, with the goal of putting those assets outside the reach of OMplc's creditors.

**Ongoing Dissipation Of OMplc's Assets During "Managed Separation"**

27. The planned "managed separation" is an ongoing process that OMplc hopes to complete as early as possible in 2018. OMplc has engaged in and continues to engage in a series of transactions that are purposefully depleting OMplc of its assets and severely imperiling its ability to satisfy the debts and liabilities owed to its creditors. As part of its "managed separation," OMplc is undergoing what it calls a "financial wind down" of its head office.[3]

---

[3]   OMplc 2017 Interim Results at 23.

28. OMplc is using its current remaining assets to cover the expenses of the "managed separation." For example, according to its public filings, the cash on OMplc's books is largely being used to serve as a "buffer to manage risks and obligations" attendant to the execution of its "managed separation."[4] OMplc acknowledges that its cash on hand may be insufficient for even that limited purpose given the "significant actual and potential demands" on OMplc's cash and liquidity during the separation period, demands that OMplc concedes could cause the capital position of its group of companies to go below its solvency early warning threshold.[5] The "managed separation" has clearly put OMplc in a very precarious financial situation.

29. Worse still for OMplc's creditors, the insufficient "liquidity buffers and cash" at OMplc are being actively "transition[ed]" from OMplc to OMplc's subsidiaries as part of the "managed separation," and OMplc is doing so without receiving fair consideration in return.[6] For example, in 2017, OMplc transferred £200 million of capital to OM Wealth for no apparent consideration. As another example, in July 2017, OMplc sold its "seed investments"—which it valued at £79 million at time—to its former subsidiary OM Asset Management for the inadequate consideration of only £48 million.

30. The transfer of OMplc's asset to its current and former subsidiaries (intentionally placing those assets outside the reach of OMplc's creditors post-separation) is well outside OMplc's usual course of business and is only just beginning. Indeed, OMplc admits that the aforementioned £200 million transfer from OMplc to OM Wealth was only the "initial step" in the "transition" of cash and liquidity buffers held at OMplc to the soon-to-be-separate

---

[4]     *Id*. at 23.

[5]     *Id*. at 23, 26.

[6]     *Id*. at 23.

businesses.[7] As explained by its Finance Director Ingrid Johnson in August 2017, OMplc has "begun the process of transitioning centrally held liquidity buffers and cash to the businesses," including a "transfer[ of] £200 million of capital into Old Mutual Wealth which has previously been run as a subsidiary of the group, but now needs to stand alone."[8] The details of these various transactions have not been made public or otherwise made known to Plaintiffs; such details are particularly within OMplc's knowledge.

        31. OMplc has a very close relationship with these transferees; indeed, the benefactors of these transfers are its current or recent subsidiaries and/or other insiders. The transferor (OMplc) and the transferees are all members of the Old Mutual group of companies, which, as a group, will retain possession, benefit and use of the transferred funds. The shareholders (including insiders) of OMplc will become shareholders of the new entities, thus retaining possession, benefit and use of the transferred property. Crucially, OMplc—soon-to-be reduced to a non-operating subsidiary—will lose such possession, benefit and use. That is the intended effect of the transfers—to move the funds out of OMplc while keeping them within the Old Mutual group of companies for the benefit of insiders, in an effort to shield its businesses from their former parent's liabilities, most notably OMplc's more than $480 million in potential liability to Plaintiffs under the Indemnity.

        32. OMplc is fully aware of this $480 million and more in liability and Plaintiffs' status as its creditor. For example, shortly after OMplc announced its "managed separation" in 2016, Plaintiffs wrote to OMplc, on June 6, 2016, to remind OMplc of its obligations under the Indemnity. Plaintiffs have been seeking suitable assurance from OMplc that its obligations

---

[7]    *Id*. at 23.

[8]    OMplc Interims 2017 Transcript at 4.

under the Indemnity will be met after the "managed separation." Such assurance has not been forthcoming.

33. OMplc's assets are being actively depleted and, given OMplc's stated intent to continue to aggressively transfer its assets to its soon-to-be independent businesses in 2018, OMplc will have few assets remaining if the "managed separation" process is allowed to continue as planned. OMplc appears primed to retain a significant amount of its debt and liabilities after the point of separation, including its more than $480 million liability to Plaintiffs under the Indemnity.

## COUNT I

### Fraudulent Transfer – N.Y. Debt. & Cred. Law §§ 276, 276-a and 279

34. Plaintiffs reallege and incorporate by reference each of the above allegations of this Complaint as if expressly set forth herein.

35. Plaintiffs are creditors of OMplc under the Indemnity and have been creditors of OMplc at all relevant times. *See* N.Y. Debt. & Cred. Law § 270 ("creditor" is any "person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent"); *see also Cruden v. Bank of New York*, 957 F.2d 961, 974 (2d Cir. 1992) (Under NY Debtor & Creditor Law, "[a] debenture holder is not required to stand by helplessly until a distant maturity date arrives while his debtor is fraudulently depleted of all its assets.").

36. Since at least 2017 and continuing through the present, OMplc has made, and continues to make, a series of transfers to closely affiliated entities that it is separating from with the actual intent to hinder, delay or defraud Plaintiffs and its other creditors, including, for example, its transfer of £200 million to OM Wealth for no apparent consideration and its sale of its "seed investments" to OM Asset Management for inadequate consideration. These transfers of OMplc's assets to its businesses are part of OMplc's "managed separation," the stated intent

of which is to relegate the once-asset rich parent OMplc to the status of non-operating subsidiary, while insulating OMplc's profitable businesses from OMplc's remaining debts and liabilities, including its liability to Plaintiffs of more than $480 million under the Indemnity.

37. In light of OMplc's plan to further dispose of its assets as part of its "managed separation," which it seeks to complete as soon as possible in 2018 and specifically has scheduled to complete a significant part of on, or very shortly after, March 15, 2018, Plaintiffs will suffer irreparable and permanent harm if injunctive relief is not issued that restrains OMplc from further disposing of its assets.

38. As a result of the foregoing, pursuant to sections 276, 276-a and 279 of the New York Debtor and Creditor Law, Plaintiffs are entitled to a judgment: (a) avoiding the fraudulent transfers that OMplc has had made to date, including, but not limited to, the aforementioned £200 million transfer to OM Wealth and the sale of its "seed investments" to OM Asset Management; and (b) enjoining OMplc's "managed separation" and enjoining OMplc from making any further transfers of its assets or other property to its subsidiaries or third-parties or otherwise disposing of its assets or other property.

## COUNT II

### Fraudulent Transfer – N.Y. Debt. & Cred. Law §§ 273-275 and 279

39. Plaintiffs reallege and incorporate by reference each of the above allegations of this Complaint as if expressly set forth herein.

40. Plaintiffs are creditors of OMplc under the Indemnity and have been creditors of OMplc at all relevant times.

41. Since at least 2017 and continuing through the present, OMplc has made, and continues to make, a series of transfers to insiders and closely affiliated entities that it is

separating from without receiving fair consideration, including, for example, its transfer of £200 million to OM Wealth for no apparent consideration and its sale of its "seed investments" to OM Asset Management for inadequate consideration.  These transfers of OMplc's assets to its businesses are part of OMplc's "managed separation," the stated intent of which is to relegate the once-asset rich parent OMplc to the status of non-operating subsidiary, while insulating OMplc's profitable businesses from OMplc's remaining debts and liabilities, including its liability to Plaintiffs of more than $480 million under the Indemnity.

42. At the time of each of the aforementioned transfers: (a) OMplc was insolvent or became insolvent as a result; (b) OMplc was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the transfers was an unreasonably small capital; and/or (c) OMplc had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

43. In light of OMplc's plan to further dispose of its assets as part of its "managed separation," which it seeks to complete as soon as possible in 2018, Plaintiffs will suffer irreparable and permanent harm if injunctive relief is not issued that restrains OMplc from further disposing of its assets.

44. As a result of the foregoing, pursuant to sections 273 through 275 and 279 of the New York Debtor and Creditor Law, Plaintiffs are entitled to a judgment: (a) avoiding the fraudulent transfers that OMplc has had made to date, including, but not limited to, the aforementioned £200 million transfer to OM Wealth and the sale of its "seed investments" to OM Asset Management; and (b) enjoining OMplc's "managed separation" and enjoining OMplc from making any further transfers of its assets or other property to its subsidiaries or third-parties or otherwise disposing of its assets or other property.

## COUNT III

### Breach of Contract

45. Plaintiffs reallege and incorporate by reference each of the above allegations of this Complaint as if expressly set forth herein.

46. Plaintiffs and OMplc entered into the Indemnity, and Plaintiffs have performed their obligations under the Indemnity.

47. OMplc agreed in the Indemnity to "execute and deliver such other agreements and documents and take such other actions as may be reasonably requested by [Plaintiffs] in order to consummate and implement the transactions contemplated [by the Indemnity]."

48. Plaintiffs have reasonably requested that OMplc provide assurances and take actions or refrain from taking actions in connection with the "managed separation" so that OMplc can perform its obligations under the Indemnity. OMplc's refusal to provide such assurances or take or refrain from taking such actions constitutes a breach of the Indemnity that threatens irreparable harm to Plaintiffs.

49. Since the actions constituting breach will render OMplc unable to pay a judgment for monetary damages, Plaintiffs are entitled to specific performance and injunctive relief enjoining OMplc's "managed separation" and enjoining OMplc from making any further transfers of its assets or other property to its subsidiaries or third-parties or otherwise disposing of its assets or other property

## COUNT IV

### Breach of Implied Covenant of Good Faith and Fair Dealing

50. Plaintiffs reallege and incorporate by reference each of the above allegations of this Complaint as if expressly set forth herein In the Indemnity, OMplc agreed to "hold

harmless and indemnify [Plaintiffs] against and in respect of . . . any and all amounts that may be paid or payable by any of the [Plaintiffs] pursuant to or arising out of the Indemnifiable Contracts," including the Guaranty.

51. Plaintiffs entered the Indemnity for the purpose of obtaining from OMplc a valuable protection against any claims against Plaintiffs under the Guaranty.

52. Under New York law, all contracts contain an implied covenant of good faith and fair dealing whereby each party promises not to frustrate the purpose of, or deprive the other party of the fruits of, the contract. The covenant of good faith is designed to protect the spirit of the agreement and prohibits a party from using oppressive or underhanded tactics to deny the other party the fruits of the parties' bargain.

53. OMplc's "managed separation" has sharply reduced or eliminated the OMplc's ability to honor its Indemnity, thereby frustrating the very purpose of the Indemnity and depriving Plaintiffs of the fruits of the Indemnity. OMplc's actions constitute a breach of the implied covenant of good faith and fair dealing.

54. Since the actions constituting breach—*i.e.*, the transfer of OMplc's assets to soon-to-be independent subsidiaries—will render OMplc unable to pay a judgment for monetary damages, Plaintiffs are entitled to specific performance and injunctive relief enjoining OMplc's "managed separation" and enjoining OMplc from making any further transfers of its assets or other property to its subsidiaries or third-parties or otherwise disposing of its assets or other property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A.  Avoidance of OMplc's fraudulent transfers;

B.  Compensatory and other damages;

C.  Injunction enjoining OMplc's "managed separation" and enjoining OMplc from making any further transfers of its assets or other property to its subsidiaries or third-parties or otherwise disposing of its assets or other property;

D.  Costs of suit, including reasonable attorneys' fees;

E.  Such other and further relief as the Court deems just and proper.

Dated: March 12, 2018
New York, New York

By: /s/ Bryce L. Friedman

Bryce L. Friedman
Deborah L. Stein
Jeffrey E. Baldwin
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Plaintiffs The Travelers Companies, Inc. and St. Paul Fire and Marine Insurance Company*